Richard W. WILLIS, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–27.

United States Court of Veterans Appeals.

Submitted July 10, 1991.

Decided Aug. 21, 1991.

As Amended Aug. 27, 1991.

■

Rick Surratt (non-attorney practitioner) for appellant.

Robert E. Coy, Acting General Counsel, Barry M. Tapp, Asst. General Counsel, Andrew J. Mullen, Deputy Asst. General Counsel, and Carolyn F. Washington were on the brief for appellee.

Before KRAMER, FARLEY and IVERS, Associate Judges.

FARLEY, Associate Judge:

In an earlier decision in this case, this Court commented as follows:

> It appears the [Board of Veterans' Appeals (Board or BVA)] reached its conclusion that the veteran's psychosis was *not* misdiagnosed in service based upon evidence which was not in the record (the file and records lost by the [Department of Veterans Affairs (VA)]) rather than upon the only evidence which *was* in the record (the VA psychiatrist's statement and other statements in support of the veteran's claim).

*Willis v. Derwinski*, 1 Vet.App. 63, 66 (1990) (emphasis in the original). Accordingly, the Court retained jurisdiction but remanded the matter to the Board pursuant to 38 U.S.C. § 7252(a) (formerly § 4052(a)) to permit reconsideration of the decision or to permit the Board to provide an adequate statement of the "reasons or bases" for rejecting the evidence in favor of the veteran as required by 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) and our decision in *Gilbert v. Derwinski*, 1 Vet. App. 49 (1990). On March 26, 1991, the Board issued a supplemental decision. *Richard W. Willis*, BVA 91–09774 (Mar. 26, 1991). The Board's supplemental decision falls wide of the mark.

We hold that the Board was clearly erroneous pursuant to 38 U.S.C. § 7261(a)(4) (formerly § 4061(a)(4)) in its conclusion that the veteran's "[s]chizophrenia was first demonstrated medically many years after separation." *Willis*, BVA 91–09774, at 9. The only conclusion that can be drawn from the record is that the veteran's psychiatric condition was present during ser-

vice. Accordingly, the BVA decisions of September 20, 1989, and March 26, 1991, are REVERSED and the matter remanded pursuant to 38 U.S.C. § 7252(a). The Secretary is directed to grant service connection for the veteran's psychiatric condition and to take the appropriate steps to ensure that he receives a prompt rating consistent with this opinion.

I.

The veteran, Richard W. Willis, served on active duty in the Air Force from October 1963 to July 1964. On January 30, 1987, the veteran filed a claim for service connection for a psychiatric disability (schizophrenia) which he alleges arose and was misdiagnosed during his service in the Air Force. (The veteran reportedly applied for and was denied compensation for the same condition in 1979 but the records have been lost.) The veteran reported that he had begun to hear voices in 1963, that he was hospitalized at Keesler Air Force Base in 1964 for this disorder, and that he was discharged on the basis of a personality disorder. R. at 18, 106. There is a notation in the record that from November 1, 1963, until January 1, 1964, the veteran was listed as having received treatment for "DEPRESSION SCHIZOPHRENIA" at the hospital at Keesler Air Force Base. R. at 18. The veteran's Report of Discharge, DD Form 214, documents that the veteran received a general discharge, under honorable conditions, at Keesler Air Force Base in July 1964, following Proceedings of a Board of Officers pursuant to Air Force Regulation 39–16, which pertains to separation based on unsuitability. R. at 16.

The first reported diagnosis of schizophrenia was in 1968, several years after the veteran left the service. Treatment records since that time reinforced the diagnosis. On June 5, 1987, and January 20, 1988, the veteran was examined and found to be suffering from chronic paranoid schizophrenia. Statements from the father of the veteran and a friend documented their belief that the veteran began to experience problems while he was in the service. By letter dated March 14, 1988, the

veteran was advised by the VA that his VA claims file, including his service medical records, had been lost. R. at 87–88. The veteran's claim for service connection for his psychiatric disability was denied by a rating decision dated June 1, 1988.

On January 20, 1989, the veteran was examined by a Board Certified VA psychiatrist. R. at 100. As we said in our earlier decision in this case:

> The psychiatrist noted that a "review of the old history indicates *credible* description of impaired sleep, hallucinations, ideas of reference & brief hospitalization at Keesler [Air Force Base] Hospital (1964) while on active duty." *Id.* (emphasis in original). The psychiatrist found that the veteran was "cooperative, bright, sincere, engaging" and "uncommonly reliable." *Id.* Finally, the psychiatrist noted that the veteran spoke "of his long frustration with loss of military medical records which, I believe, did document his hospitalization & probably impulsive & I believe, erroneous diagnosis of Personality Disorder. Careful past history shows *no* traits or behaviors consistent with personality disorder." *Id.* (emphasis in original). The strength of the psychiatrist's conviction is underscored by a marginal note in which he placed his qualifications on the record: "Copy to Patient: this physician is Board-certified since 1959[;] had 6½ yrs. svc in USAF (77 to 83) as chmn, Dept of Psychiatry, Scott AFB, Ill." *Id.*

*Willis*, at 65.

On September 20, 1989, the BVA upheld the denial of the veteran's claim. *Richard W. Willis*, BVA 90–04812 (Sept. 20, 1989). The veteran filed a timely Notice of Appeal on January 16, 1990. Oral argument was held on August 29, 1990. On October 17, 1990, the Court remanded the decision to the Board. On March 26, 1991, the BVA issued a supplemental decision concluding that appellant's "[s]chizophrenia was not incurred in or aggravated by service...." *Willis*, BVA 91–09774, at 9. The Board once again upheld the denial of service connection for a psychiatric disability. On May 15, 1991, appellant filed a supplemental brief. The Secretary filed a response

on July 3, 1991. Although the case was remanded, we retained jurisdiction.

## II.

This Court has made clear that a remand is not merely an academic exercise. "We do not mean to imply that a remand ... is merely for the purposes of rewriting the opinion so that it will superficially comply with the 'reasons or bases' requirement of 38 U.S.C. § 7104(d)(1) (formerly § 4004[ (d)(1) ]). A remand is meant to entail a critical examination of the justification for the decision." *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). If the Board felt that additional development was necessary in order to adjudicate the claim, it was free to do so. *Colvin v. Derwinski*, 1 Vet.App. 171, 174 (1991). In this case, however, the Board apparently concluded that additional development was not necessary. On remand the BVA did not make any effort to conduct a psychiatric examination, to direct a comprehensive record review, or to secure additional records. Instead, it merely attempted to use its supplemental decision to justify its original opinion by engaging in a two-pronged attack upon the credibility of the veteran and on the opinion of its own psychiatrist. Under the circumstances and upon the record of this case, that exercise was not successful.

## A.

Service connection is to be granted to a veteran who served "in the active military, naval, or air service, during other than a period of war," and developed a "disability resulting from personal injury suffered or disease contracted in line of duty, or ... aggravat[ed] ... a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C. § 331 (1988). Part 4 of title 38 of the Code of Federal Regulations is the rating schedule promulgated by the Secretary pursuant to his authority under 38 U.S.C. § 355 (1988) for rating disabilities for compensation purposes. Specifically, 38 C.F.R. § 4.132 (1990) is the schedule of ratings for mental disorders. Paranoid schizophrenia

is included among the psychotic disorders for which compensation will be granted. *Id.*, Diagnostic Code 9203.

■ In reviewing BVA decisions, this Court is limited to reviewing "the record of proceedings before the [Secretary] and the Board." 38 U.S.C. § 7252(b) (formerly § 4052(b)); *see also Rogozinski v. Derwinski*, 1 Vet.App. 19, 20 (1990) ("This Court is thus precluded by statute from considering any material which was not contained in the 'record of the proceedings before the [Secretary] and the Board.'"). In reviewing a finding of fact made by the Board, the Court will "hold unlawful and set aside such finding if the finding is clearly erroneous." 38 U.S.C. § 7261(a)(4); *Gilbert v. Derwinski*, at 52 (1990). The "clearly erroneous" standard has been defined as follows: "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA ... we cannot overturn them." *Gilbert*, at 53.

### B.

The record in this case contains the following evidence. The veteran has testified that he was told he had a personality disorder while he was on active duty in the Air Force. There is a notation in the record that from November 1, 1963, to January 1, 1964, the veteran was given treatment for "DEPRESSION SCHIZOPHRENIA" at the hospital at Keesler Air Force Base. The VA lost the veteran's VA claims folder which contained his service medical records. A Board Certified VA psychiatrist has given his opinion that the veteran's current chronic paranoid schizophrenia originated while he was in service and that the reported diagnosis of personality disorder while on active duty was erroneous. This is the only comprehensive examination in the record on the origins of the veteran's psychiatric disorder. There is no other medical evidence, testimony, or opinion of record which supports a contrary conclusion.

In its attempt to buttress its original decision, the Board has ranged far beyond the boundaries of the record in this case and has entered the world of presumptions and speculation. The Board attacked the VA psychiatrist's report by way of attacking the veteran's credibility. However, it did so based not upon what the veteran said but what the Board presumed he said to the psychiatrist during the 1989 evaluation. Then it found that the statements which it presumed were made were not credible. It is indeed strange that the BVA spent its entire supplemental decision attacking the veteran's credibility whereas it relied on that same veteran's statements of what a doctor told him his condition was to support the finding of an in-service diagnosis of personality disorder. The only basis in the record for the Board's conclusion that the veteran was diagnosed as having a personality disorder in service is the statement of the veteran himself. R. at 106. Because the VA lost appellant's VA claims file, including his service medical records, there is no basis for confirming or denying that diagnosis.

In attacking the VA psychiatrist's finding that the in-service diagnosis of personality disorder was incorrect, the Board stated:

[I]t should be emphasized that the psychiatric evaluation which *presumably* took place in service was based on an opportunity to personally observe and evaluate the appellant.... [T]he diagnosis made after personal observation of a patient must be accorded greater probative weight than one based upon a clinical evaluation more than 20 years after the events in question.

*Willis*, BVA 91–09774, at 8 (emphasis added). Again, the Board engaged in an unusual, extra-record, reasoning process.

First, the Board "presumed" to know that the in-service examination was based on an opportunity to personally observe. Then, in the next sentence, the Board raised its presumption into a fact. Finally, the Board used the "fact" of personal in-service observation as the basis for discounting the opinion of the VA's own psychiatrist. Similarly, the Board castigated the psychiatrist for his attack upon the competency of the in-service diagnostician, an attack which never took place. The Board stated: "[T]he assertion of misdiagnosis in service presumes a lack of competency on the part of the psychiatric evaluator during service...." *Id.* Yet, the examining VA psychiatrist did not "presume a lack of competency" and there is no statement made to that effect. Again, since the VA lost the veteran's service records, there was no way for the VA psychiatrist to confirm that the diagnosis of personality disorder had been made or why it was made, much less presume a lack of competency.

### C.

 In both its original decision and its supplemental decision, the Board ruled that the veteran's present psychiatric disability (schizophrenia) was not present during service. As noted earlier, a finding of fact by the BVA cannot be overturned by this Court if there is a plausible basis for it. That is not the case here. All of the evidence of record, the testimony of the veteran, the statements from his father and his friend, and the expert opinion of the examining psychiatrist support the finding that the veteran's psychiatric disability was present during service. The only contrary evidence, the statement of the veteran that he was diagnosed in service as having a personality disorder, is not and cannot be confirmed by medical records which were lost by the VA. Moreover, the report of the veteran, even if accurate, is contradicted by the uncontroverted medical opinion of the VA psychiatrist. The conclusion of the examining VA psychiatrist is a medical conclusion, one which the BVA is not free to ignore or disregard. *See Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990) (Board must provide reasons or bases for its medi-

cal conclusions). Nor may the Board substitute its own medical judgment. *Colvin,* at 174 (Board cannot provide its own medical judgment, rather it must consider only independent medical evidence).

### III.

On this record, this Court is left with the "definite and firm conviction that a mistake has been committed." *United States Gypsum Co.,* 333 U.S. at 395, 68 S.Ct. at 542. We hold that the Board was clearly erroneous pursuant to 38 U.S.C. § 7261(a)(4) in concluding that the veteran's "[s]chizophrenia was first demonstrated medically many years after separation." *Willis,* BVA 91–09774, at 9. The only conclusion that can be drawn from the record is that the veteran's psychiatric condition was present during service. Accordingly, the BVA decisions of September 20, 1989, and March 26, 1991, are REVERSED and the matter remanded pursuant to 38 U.S.C. § 7252(a). The Secretary is directed to grant service connection for the veteran's psychiatric condition and to take the appropriate steps to ensure that he receives a prompt rating consistent with this opinion.

*It is so Ordered.*