**Aldosie CHISEM, Appellant,**

**v.**

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 90–1540.**

United States Court of Veterans Appeals.

Feb. 9, 1993.

William G. Smith, Los Angeles, CA, was on the brief, for appellant.

James A. Endicott, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Andrew J. Mullen, Deputy Asst. Gen. Counsel, and Jacqueline E. Monroe, Washington, DC, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and MANKIN, Associate Judges.

MANKIN, Associate Judge:

On October 7, 1992, the Court issued an opinion in this case which reversed and remanded the November 20, 1990, Board of

Veterans' Appeals (BVA or Board) decision with instructions that the Board adjudicate the issue of obvious error raised by appellant. The Secretary of Veterans Affairs (Secretary) filed a motion for reconsideration of the October 7, 1992, opinion. The Secretary contends that there is no authority to direct the BVA to adjudicate the issue of obvious error; "the authority to review the record for 'obvious error' resides exclusively in the sound discretion of the Board itself." Motion for Reconsideration at 6–7. The Court grants the Secretary's motion for reconsideration of the October 7, 1992, decision in this case, vacates that decision, and issues this decision in its place.

Appellant, Aldosie Chisem, seeks reversal of a November 19, 1990, BVA decision that denied entitlement to service connection for a psychiatric disorder. The Secretary filed a motion for remand. The Court has jurisdiction pursuant to 38 U.S.C.A. § 7252(a) (West 1991). The Court denies the Secretary's motion, and the November 21, 1991, BVA decision is reversed and the matter is remanded pursuant to 38 U.S.C.A. § 7261(a)(4) (West 1991). The Secretary is directed to grant service connection for the veteran's psychiatric condition and to take the appropriate steps to ensure that he receives a prompt rating consistent with this opinion.

## I. BACKGROUND

Aldosie Chisem served on active duty in the U.S. Army from November 4, 1942, to September 6, 1943. At the time of induction, he was found to be physically and mentally qualified. While in service, he was treated for hemorrhoids, and had a hemorrhoidectomy on December 24, 1942. It appears that medical malpractice was committed when the veteran was given an oral dose of silver nitrate instead of a laxative during his recovery from the hemorrhoid surgery. Throughout his service medical records, the veteran is described as having a mental deficiency (mental age 9 years, 6 months) and an intelligence quota (I.Q.) of 59%. One service medical record (undated) notes that: "One B unknown thinks he may be crazy," and that the veteran complained of weakness and ner-

vousness, which it says the veteran attributed to "excessive intercourse over a period of the last 6 years." A physical examination conducted on July 7, 1943 noted "weakness-nervousness" and a working diagnosis or impression of "[p]sychoneurosis." A service record of July 7, 1943, in reference to the veteran, stated: "Soldier is either a true psychoneurotic or a plenty cagey coon. Believe a psychiatrist should decide which. I find no organic disease." In July and August 1943, it was recommended that the veteran be discharged from duty for mental deficiency. The "Reason and authority for separation [was for] Convenience of the Government."

The veteran first applied for compensation and pension with the Veterans' Administration (now Department of Veterans Affairs) (VA) on June 26, 1947. The VA Regional Office (VARO) in Seattle, Washington, issued a rating decision on October 10, 1947, granting service connection for the hemorrhoidectomy scar rated as 0% disabling and denying service connection for mental deficiency as it was not a disability within the meaning of the law.

In an attempt to reopen his claim for service connection in February 1952, he submitted several affidavits, including doctors', fellow servicemen's, and his own, in support of his claim. Again on February 29, 1952, the VARO denied service connection for a nervous or mental disability. On August 5, 1952, and September 11, 1952, Dr. Myron Kass sent letters to the VA expressing his diagnosis of the veteran as psychoneurosis-mixed type with elements of neurasthenic features and depression. Dr. Kass also noted that this illness began and was aggravated during the veteran's service. Apparently, the veteran appealed to the BVA, because it issued a decision denying service connection for a neuropsychiatric disorder on February 19, 1953. The BVA found that a "medical study of the basic disorder is not considered necessary for a proper disposition of the issue under consideration." The 1953 BVA decision denied the veteran's appeal because the "condition" existed prior to service and

was not a disease or disability within the meaning of the law.

On July 15, 1963, the veteran attempted to reopen his claim by filing a statement which explained his ailments and frustrations in the Army and with the VA. He also supplied a list of all the doctors who had treated him since service. The VA sent a letter to the veteran on July 29, 1963, explaining that he needed new evidence to reopen his claim. Dr. Arthur P. O'Leary sent a letter verifying treatment of the veteran at intervals from 1950 through 1953 for neurogenic complaints. Dr. William Mattson, Jr., provided a current examination in 1963 diagnosing "anxiety state" and verified that the veteran had seen his father, Dr. William Mattson, Sr., for anxiety from March 7, 1947, to December 15, 1947. The VA provided the veteran with a medical examination for the first time on April 16, 1965. The special medical examination noted that in describing his symptoms, the veteran "seem[ed] to be honest and truthful and not attempting to exaggerate."

On May 24, 1979, Dr. Julius Mosley, Jr. sent a letter to the VA stating that he had been treating the veteran for various enumerated ailments and stated:

> Mr. Chisem apparently was classified while in the military service as haveing [sic] "Mental deficiency; mental age 9⁶/₁₂ years, I.Q. 59% epti." My contact with the patient and physical examinations lead me to reject the aforementioned declaration as invalid. It is probably better adjudicate [sic] his so-called "Mental deficiency" to prejudice or to the lack of education, but not to any intellectual impediment.

On March 10, 1990, the veteran filed a claim to reopen his previously denied claim based upon newly discovered evidence, namely an extensive 13–page psychiatric report from Dr. Roland S. Jefferson, dated February 15, 1990. The rating decision of March 23, 1990, concluded: "The opinion of Dr. Jefferson is not considered new or material but only an expression of what he feels based upon the vet's comments & his review of copies of evidence furnished him." A personal hearing was held on July 2, 1990, subsequent to appellant's Notice of Disagreement and request for a hearing on April 14, 1990. At this hearing, the veteran submitted a service medical record from November 5, 1942, indicating that he was being reclassified from general duty to light duty by reason of his anxiety state. The hearing officer concluded that the evidence submitted subsequent to the 1953 Board decision was not considered new and material, and that the prior rating decision was "not found to be in error." In his appeal to the BVA, the veteran alleged "obvious error" in the 1953 BVA decision and racial prejudice. The November 19, 1990, BVA decision denied service connection for a psychiatric disorder as the evidence received subsequent to the February 1953 BVA decision was new, but did not alter the basis upon which the prior decision was predicated. *Aldosie Chisem*, BVA 90–39702, at 6 (Nov. 19, 1990).

## II. ANALYSIS

Appellant argues that he was the victim of extreme and blatant racial prejudice while in the Armed Forces of the United States and that this racism and a misdiagnosis in service have been ignored by the VA in denying service connection for a psychiatric disorder. The Secretary filed a motion for remand addressing most of the issues raised by appellant's brief. Appellant, however, filed in opposition to the Secretary's motion and requests that the Court reverse the BVA decision.

### A.

On February 19, 1953, the BVA denied service connection for a neuropsychiatric disorder. That decision became a final decision and is not subject to review by this Court. 38 U.S.C.A. § 7105 (West 1991); 38 C.F.R. §§ 3.104(a), 20.302, 20.1104 (1992). The exception to the rule of finality is 38 U.S.C.A. § 5108 (West 1991) which states:

> If new and material evidence is presented or secured with respect to a claim which has been disallowed, the Secretary shall reopen the claim and review the former disposition of the claim.

Both the Secretary and appellant agree that in its November 19, 1990, decision the BVA failed to perform the "two-step analysis" required by section 5108 and *Manio v. Derwinski,* 1 Vet.App. 140, 145 (1991). Additionally, the Secretary, in his motion for remand, correctly noted:

> The decision, however, contains no specific discussion of other medical and lay evidence received subsequent to the BVA's 1953 decision, including statements and hearing testimony provided by the veteran. The BVA's cursory discussion and evaluation of a portion of the evidence submitted in support of the veteran's claim appears to fall far short of statutory and judicial directives with respect to consideration of reopened claims, as well as the requirement that a BVA decision contain sufficient reasons or bases for the denial of a veteran's claim. *See* 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)).

Motion of Appellee at 4. The Secretary further noted "that the [BVA] decision contains no genuine discussion of the applicability of the benefit of the doubt/reasonable doubt principle, contained at 38 U.S.C. § 5107(b) (formerly § 3007(b)) and 38 C.F.R. § 3.102, although the record contains some evidence submitted in support of the veteran's claim." Motion of Appellee at 7.

In addition to recognizing the Board's failure to consider all the evidence of record, this portion of the Secretary's motion essentially conceded the error as argued by appellant in his brief: that the BVA failed to consider the sworn testimony given by appellant at a personal hearing as evidence and to assess its credibility; that the BVA decision failed to give a full and complete explanation of its decision as required by *Gilbert v. Derwinski,* 1 Vet.App. 49, 53 (1990), and 38 U.S.C.A. § 7104(d)(1) (West 1991); and that the Board failed to apply the reasonable doubt standard correctly to his case. The Court agrees with the parties and holds that the BVA committed error.

**B.**

The issue of whether "new and material" evidence was submitted is a legal question that this Court reviews de novo, without deference to the BVA's findings. *Colvin v. Derwinski,* 1 Vet.App. 171, 174 (1991). New evidence is "not that which is merely cumulative of other evidence on the record." *Id.* Material evidence "is relevant and probative of the issue at hand." *Id.* The Court finds as a matter of law that appellant submitted new and material evidence, as there was "a reasonable possibility that the new evidence, when viewed in the context of all the evidence, both new and old, would change the outcome." *Colvin,* 1 Vet.App. at 174.

On the foregoing analysis, therefore, the case would normally be remanded to the Board for a proper evaluation of all the evidence submitted, for consideration of appellant's testimony as evidence and an assessment of its credibility, and for a clear statement of its decision, with articulation of the reasons or bases therefor. The decision of the BVA need not be remanded for correction of the aforementioned error, however, as reversal is the appropriate remedy in this case, as is concluded in part D, below. *See Schafrath v. Derwinski,* 1 Vet.App. 589, 593 (1991); *Hanson v. Derwinski,* 1 Vet.App. 512 (1991); *Willis v. Derwinski,* 1 Vet.App. 66 (1991).

**C.**

Service connection is to be granted to a veteran who served "in the active military, naval, or air service, during a period of war" and developed a "disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty." 38 U.S.C.A. § 1110 (West 1991). "Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service." 38 C.F.R. § 3.303(d) (1992).

When reviewing factual determinations made by the BVA, the Court will

"hold unlawful and set aside such finding if the finding is clearly erroneous." 38 U.S.C.A. § 7261(a)(4); *Gilbert,* 1 Vet.App. at 52. A factual finding "is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.,* 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948); *Brannon v. Derwinski,* 1 Vet.App. 314, 317 (1990); *Spencer v. Derwinski,* 1 Vet.App. 125, 126–27 (1991); *Gilbert,* 1 Vet.App. at 52–53. In determining whether a finding is clearly erroneous, "this Court is not permitted to substitute its judgment for that of the BVA on issues of material fact; if there is a 'plausible' basis in the record for the factual determinations of the BVA, ... we cannot overturn them." *Gilbert,* 1 Vet. App. at 53; *see Anderson v. City of Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The Court must now determine, under the standard announced by the Supreme Court and in *Gilbert,* whether the BVA's factual findings are clearly erroneous.

### D.

■ All of the evidence in the record clearly supports the veteran's claim for a service-connected psychiatric disorder. The Court finds no "plausible basis" in the record for the Board's factual conclusions, and thus, the decision must be reversed. The evidence submitted prior to the 1953 Board decision included the following evidence. Aside from the racial comment in one medical record, the service medical records indicate the onset of a psychiatric disorder: a "psychoneurosis"; "Provisional diagnosis—1. Psychoneurosis"; "a true psychoneurotic"; "One unknown B thinks he may be crazy"; and "nervousness." Private medical records were submitted to show treatment for a mental condition shortly after service. Dr. George Kunz treated the veteran "through all of 1948 and early 1949 for a variety of nervous symptoms." Dr. Arthur P. O'Leary administered "treatment for a nervous disorder since 11–26–51" and noted that he would need "treatment to continue for an indefinite period of time." Since August 1952, Dr. Myron Kass diagnosed appellant with psychoneurosis, mixed type with neurasthenic features and depression and found that the veteran's history "definitely establishes the onset of this illness while in the service ... [T]he service was a marked aggravating factor in the onset of his illness." The veteran also submitted statements in his own behalf and from fellow servicemen who indicated that the veteran suffered from a nervous condition in service. It is apparent from the Board's noncompliance with *Manio* that this evidence was not weighed with evidence submitted since the 1953 decision.

After the Board's 1953 decision, appellant submitted several written statements on his behalf and sworn testimony at a hearing, in addition to compelling medical evidence to support his claim. A newly discovered service medical record, dated November 1942, revealed that the veteran was reclassified from general duty to light duty for "reasons of anxiety state." Dr. Arthur P. O'Leary submitted a statement stating that he treated the veteran for neurogenic complaints at intervals from 1950 through 1953. In 1963, Dr. William Mattson, Jr. noted that his father had treated the veteran for anxiety from March 1947 to December 1947 and that his own diagnostic impression of the veteran was that he was in "anxiety state." In 1979, Dr. Mosley noted that the in-service diagnosis of "mental deficiency" could be attributed to prejudice or lack of education. The most comprehensive and persuasive evidence was Dr. Jefferson's 13–page medical evaluation.

After a meticulous review of all the evidence of record, Dr. Jefferson noted and explained the misdiagnosis of "mental deficiency":

The patient was labeled as mentally deficient by military authorities. Nothing could be further from the truth. Mr. Chisem was never mentally deficient. He certainly lacked a formal education but this poor fund of knowledge has nothing to do with the diagnosis of mental retardation.... Instead, what the

military completely missed in it's [sic] assessment of Mr. Chisem, much of which no doubt because of their own racism, was the fact that his behavior changes that surfaced so soon after his induction represented what we now call a "somatiform disorder". His total preoccupation with his "organs" is at the core of this disorder and grew out of several things, *all of which* were precipitated by his military service.

(emphasis in original). Dr. Jefferson also noted: "Because he was deemed to be mentally retarded, even once discharged from the Army, he was not able to get the established medical community to take his complaints seriously.... [I]t becomes clear that the U.S. Army bears the brunt of responsibility for this man's emotional disorder...."

The BVA dismissed the evidence submitted since the 1953 Board decision as "cumulative and repetitive in nature. It merely shows that the veteran continues to suffer from psychiatric symptoms which did not originate in service." *Chisem*, BVA 90–39702, at 5. While the BVA acknowledged that Dr. Jefferson's evaluation "specifically shows that his report was based on a review of the records on file" and that "[h]is report ... suggest[ed] another classification to be applied to the veteran's nervous symptoms," the Board found, "however, [the records] do not in and of themselves show incurrence or aggravation of a chronic psychiatric disability in service." *Chisem*, BVA 90–39702, at 5. The Board similarly discarded the newly discovered service medical record by stating:

> An anxiety state, in and of itself, would not be consistent with onset or aggravation of a psychiatric disability for VA compensation purposes. It would merely be reflective of an acute nervous symptom which resolved without residual disability as no chronic psychiatric disorder was demonstrated in service.

*Chisem*, BVA 90–39702, at 5.

There is not a scintilla of documentation to support either of the BVA's conclusions which repudiate germane evidence supporting appellant's claim. This Court has "ap-

proved of the use of a medical expert to offer an opinion as to whether a veteran's current disability had its origins in the service." *Hanson*, 1 Vet.App. at 516 (embracing the holding of *Willis*, 1 Vet.App. 66). The Court has further held that "the conclusion of an examining psychiatrist is a medical conclusion, one which the BVA is not free to ignore or disregard." *Hanson*, 1 Vet.App. at 516 (quoting *Willis*, 1 Vet. App. at 70). "Nor may the Board substitute its own medical judgment." *Willis*, 1 Vet.App. at 70 (citing *Colvin v. Derwinski*, 1 Vet.App. at 175. (Board cannot provide its own medical judgment; rather, it must consider only independent medical evidence)). In this case, the Board could have obtained an additional medical expert to review the records and offer an opinion as to the origins of the veteran's current disability. *Colvin*, 1 Vet.App. at 175. In fact, the Board is required to remand a claim to the VARO for further development where it finds the record inadequate. 38 C.F.R. § 19.9 (1992). *See Hanson*, 1 Vet.App. at 517; *Littke v. Derwinski*, 1 Vet.App. 90, 93 (1990). Here, the Board failed to do so.

Both Dr. Mosley's and Dr. Jefferson's expert opinions linking the veteran's current psychiatric disorders to his military service stand unrebutted and are supported by the evidence of record. Therefore, all of the evidence establishes under 38 C.F.R. § 3.303(d) that the veteran's psychiatric disorder was incurred in service. On this record, the Court is left with the "definite and firm conviction that a mistake has been committed." *United States Gypsum Co.*, 333 U.S. at 395, 68 S.Ct. at 542. We hold, pursuant to 38 U.S.C.A. § 7261(a)(4), that the Board was clearly erroneous in concluding: "The evidence received subsequent to the February 1953 Board of Veterans Appeals decision is new, but does not alter the basis upon which the prior decision was predicated." *Chisem*, BVA 90–39702, at 6. The only conclusion that can be drawn from the record is that the veteran's psychiatric disorder was present and misdiagnosed during service.

## E.

Appellant urges the Court to "adopt the 'Treating Physician Rule' and require the VA to give the opinions of treating physicians greater weight in evaluating claims made by veterans." Br. of Appellant at 18. The Secretary gave no response to this argument. As the BVA gave no weight to the records of the veteran's treating physicians, this case must be reversed as clearly erroneous since there is no plausible basis for the BVA's factual conclusions. The Court has reviewed all the evidence in favor of the veteran's claim of service connection, including the records of the veteran's treating physicians.

■ This Court has consistently held: "The conclusion of the examining VA psychiatrist is a medical conclusion, one which the BVA is not free to ignore or disregard." *Willis*, 1 Vet.App. at 70. The Court extended this principle to the medical conclusion of any examining psychiatrist. *Gleicher v. Derwinski*, 2 Vet.App. 26, 29 (1991); *Hanson*, 1 Vet.App. at 516; *Caldwell v. Derwinski*, 1 Vet.App. 466, 470 (1991). Recently, the Court expanded this principle to the opinions of treating physicians in general. *Smith v. Derwinski*, 2 Vet.App. 137, 141 (1992) ("the BVA is not free to ignore the opinion of a treating physician."). The Court declines, however, to adopt a rule that gives the opinions of treating physicians greater weight in evaluating claims made by veterans. As in the consideration of any evidence submitted in support of a veteran's claim, the BVA must provide the reasons or bases for the acceptance or rejection of the medical opinions of treating physicians and reasons or bases for the relative weight and probability given to such evidence. 38 U.S.C.A. § 7104(d)(1); *see Sammarco v. Derwinski*, 1 Vet.App. 111, 112–13 (1991); *Gilbert*, 1 Vet.App. at 56.

## F.

■ Appellant argues that due to blatant racism, there was clear and unmistakable error since the first rating decision under 38 U.S.C.A. § 7103(c) and § 503(a) (West 1991). Appellant urges the Court to award service connection for his mental disease to the date of his separation from service, September 6, 1943. While the Court is appalled by the racist comment in the veteran's service medical record and the treatment that he has received by the VA, we cannot do this for several reasons. First, the veteran did not apply for compensation and pension benefits until June 26, 1947, and if benefits could be awarded, this would be the earliest date possible. Second, the October 10, 1947, rating decision was never appealed, and thus, became a final decision and is not subject to review by this Court. 38 U.S.C.A. § 7105; 38 C.F.R. §§ 3.104(a), 20.302, 20.1103 (1992).

■ The Court has recently held that it has limited jurisdiction to review cases for "clear and unmistakable error." *Russell v. Principi*, 3 Vet.App. 310, 314–15 (1992) (consolidated with *Collins v. Principi*, No. 90–416) (en banc). The BVA must have adjudicated the issue; it cannot be raised before this Court for the first time. *See id.* at 315. In this case, appellant raised this issue in his latest attempt to reopen; however, the BVA never adjudicated the issue of whether there was "clear and unmistakable" error in the rating decisions below. Without a final adjudication by the BVA on this issue, the Court does not have jurisdiction to review it at this time.

■ The BVA "must review all issues which are reasonably raised from a liberal reading of the appellant's substantive appeal." *Azurin v. Derwinski*, 2 Vet.App. 489 (1992); *Mingo v. Derwinski*, 2 Vet. App. 51, 54 (1992) (citing *Myers v. Derwinski*, 1 Vet.App. 127, 129 (1991)). The VA's statutory "duty to assist" the veteran under 38 U.S.C.A. § 5107(a) (West 1991) to develop the facts pertinent to his claim must extend the liberal reading given to a veteran's substantive appeal "to include issues raised in all documents or oral testimony submitted prior to the BVA decision." *EF v. Derwinski*, 1 Vet.App. 324, 326 (1991). Appellant raised the claim that "clear and unmistakable" error was present in the rating decisions below, and this claim must be remanded for adjudication.

### G.

Appellant's claim must also be remanded for the Board to adjudicate the issue of "obvious" error in the 1953 BVA decision. The VA regulations permit appellant to raise a claim for "obvious" error, as follows:

> Reconsideration of an appellate decision may be accorded at any time by the Board of Veterans' Appeals *on motion by the appellant or his or her representative* or on the Board's own motion: (a) *Upon allegation of obvious error* of fact or law ...

38 C.F.R. § 20.1000 (1992) (emphasis added). Appellant specifically raised the issue of "obvious" error before the Board, but it did not consider this claim. As this Court has repeatedly held, and as stated above, the BVA *must* consider *all* issues raised in appellant's substantive appeal. *See Azurin, supra; Mingo, supra; Myers, supra; EF, supra.* In *Myers,* the Court found this holding to be derived directly from the VA's own regulation set out in 38 C.F.R. § 19.123 (now appearing in part at 38 C.F.R. § 20.202 (1992)). 1 Vet.App. at 129–30. The statutory authority for this regulation appears at 38 U.S.C.A. § 7105.

▮ In his motion for reconsideration, the Secretary asserts that the authority to review the record for "obvious error" resides exclusively in the discretion of the Board. We disagree. While the BVA may have discretion to *correct* an "obvious" error, when one is found, it does not have discretion to determine whether it will *consider* such a claim. *See* 38 U.S.C.A. § 7103(c); *Azurin, supra; Mingo, supra; Myers, supra; EF, supra.*

Based on this regulatory and statutory authority, as well as our precedential opinions, we remand the issue of "obvious" error to the Board for adjudication. Once the Board resolves the issue of "obvious" error, as well as the issue of "clear and unmistakable" error, it must determine the effective date of the award for the service-connected psychiatric disorder.

### III. CONCLUSION

The November 21, 1990, BVA decision is reversed, and the matter remanded pursuant to 38 U.S.C.A. § 7252(a). The Secretary is directed to grant service connection for the veteran's psychiatric condition and to take the appropriate steps to ensure that he receives a prompt rating consistent with this opinion.