Citation Nr: 1221997 
Decision Date: 06/22/12 Archive Date: 07/02/12

DOCKET NO. 10-29 488 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida


THE ISSUE

Entitlement to service connection for the cause of the Veteran's death.


REPRESENTATION

Appellant represented by: Florida Department of Veterans Affairs


ATTORNEY FOR THE BOARD

D. Whitehead, Associate Counsel

INTRODUCTION

The Veteran had active service from March 1944 to May 1946. The Veteran died in August 2007. The Appellant in this matter is his surviving spouse.

This matter is before the Board of Veterans' Appeals (Board) on appeal from an April 2008 rating decision of the St. Petersburg, Florida, Regional Office (RO) which, in pertinent part, denied service connection for the cause of the Veteran's death. In August 2010, the Board advanced the Appellant's appeal on the docket upon its own motion.

In August 2010 and July 2011, the Board remanded the case to the RO, via the Appeals Management Center (AMC), for further development and adjudicative action. In an April 2012 Supplemental Statement of the Case (SSOC), the RO/AMC affirmed the determination previously entered. The case has been returned to the Board for further appellate review.

Please note this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2011). 38 U.S.C.A. § 7107(a)(2) (West 2002).


FINDINGS OF FACT

1. The Veteran died in August 2007. The immediate cause of his death listed on his death certificate was atherosclerotic cardiovascular disease; fracture of the left hip and left rib, posttraumatic stress disorder (PTSD) with panic attacks, and peptic ulcer were listed as other significant conditions contributing to death but not resulting in the underlying cause of death.

2. At the time of his death, the Veteran was service connected for PTSD; residuals of a shell fragment wound to the left leg; tinnitus; peptic ulcer disease; scar on the back; scar on the right thigh; and bilateral hearing loss. 

3. The preponderance of the evidence does not show that the Veteran's death, due to atherosclerotic cardiovascular disease, was related to his military service or to his service-connected disabilities. 


CONCLUSION OF LAW

The criteria for entitlement to service connection for the cause of the Veteran's death have not been met. 38 U.S.C.A. §§ 1110, 1112, 1137, 1310, 5107 (West 2002 & Supp. 2011); 38 C.F.R. §§ 3.30, 3.102, 3.159, 3.303, 3.307, 3.309, 3.312 (2011).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

VA's Duty to Notify and Assist

The Veterans Claims Assistance Act of 2000 (VCCA), 38 U.S.C.A. §§ 5100, 5102-5103A, 5106, 5107, 5126 (West 2002 & Supp. 2011), 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2011) requires VA to assist a claimant at the time he or she files a claim for benefits. As part of this assistance, VA is required to notify claimants of the information and evidence necessary to substantiate their claims. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b)(1).

Specifically, VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will attempt to provide; and (3) that the claimant is expected to provide. Beverly v. Nicholson, 19 Vet. App. 394, 403 (2005).

In addition, the notice requirements of the VCAA apply to all five elements of a service-connection claim, including: (1) Veteran status; (2) existence of a disability; (3) a connection between the Veteran's service and the disability; (4) the degree of disability; and (5) effective date of the disability. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). Specifically, the notice must include notice that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded. Id. at 486.

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) previously held that any errors in notice required under the VCAA should be presumed to be prejudicial to the claimant unless VA shows that the error did not affect the essential fairness of the adjudication. See Sanders v. Nicholson, 487 F.3d 881 (Fed. Cir. 2007). Under Sanders, VA bore the burden of proving that such an error did not cause harm. Id. However, in Shinseki v. Sanders, 129 S.Ct. 1696 (2009), the United States Supreme Court (Supreme Court) held that the Federal Circuit's blanket presumption of prejudicial error in all cases imposed an unreasonable evidentiary burden upon VA. Rather, in Shinseki v. Sanders, the Supreme Court suggested that determinations concerning prejudicial error and harmless error should be made on a case-by-case basis. Id. As such, in conformance with the precedents set forth above, on appellate review the Board must consider, on a case-by-case basis, whether any potential VCAA notice errors are prejudicial to the claimant. 

By letters dated in February 2008 and April 2009, the Appellant was notified of the evidence not of record that was necessary to substantiate her claim. She was told what information that she needed to provide, and what information and evidence that VA would attempt to obtain. The claim was subsequently readjudicated in a SSOC. Under these circumstances, the Board finds that the notification requirements of the VCAA have been satisfied.

Adequate notice has been provided to the Appellant prior to the transfer and certification of her case to the Board and complied with the requirements of 38 U.S.C. § 5103(a) and 38 C.F.R. § 3.159(b). With respect to the Dingess requirements, as entitlement to service connection is being denied, no effective date or rating percentage will be assigned, thus, the Board finds that there can be no possibility of any prejudice to the Appellant under the holding in Dingess, supra. 

Certain additional VCAA notice requirements attach in the context of a claim for Dependency Indemnity and Compensation (DIC) benefits based on service connection for the cause of death. Generally, section 5103(a) notice for a DIC case must include: (1) a statement of the conditions, if any, for which a Veteran was service-connected at the time of his or her death; (2) an explanation of the evidence and information required to substantiate a DIC claim based on a previously service-connected condition; and (3) an explanation of the evidence and information required to substantiate a DIC claim based on a condition not yet service-connected. In addition, the content of the section 5103(a) notice letter will depend upon the information provided in the claimant's application. Hupp v. Nicholson, 21 Vet. App. 342, 352-353 (2007). In this case, the aforementioned VCAA notice letters told the Appellant that she needed medical evidence relating the cause of the Veteran's death to his period of active service or to his service-connected disabilities. Specifically in the April 2009 letter, the Appellant was informed that she needed to provide evidence that a service-connected disability was the primary or contributory cause of the Veteran's death. Therefore, the letters were responsive to her application for benefits.

Next, the VCAA requires that VA make reasonable efforts to assist the claimant in obtaining evidence necessary to substantiate a claim. The Veteran's relevant service treatment records, VA and private medical records, and certificate of death have been obtained. Additionally, the Appellant has submitted her own statements in support of her claim. The Appellant has not made the RO or the Board aware of any additional evidence that needs to be obtained in order to fairly decide this appeal, and has not argued that any error or deficiency in the accomplishment of the duty to assist has prejudiced her in the adjudication of her appeal. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, 444 F. 3d 1328 (Fed. Cir. 2006). 

The Board notes that on remand to the agency of original jurisdiction, the RO, in August 2010, was ordered to obtain any available treatment records from the skilled nursing facility, F.W.N.H., where the Veteran resided at that time of his death. In November 2010, the AMC sent a letter to F.W.N.H. requesting the identified treatment records. However, the nursing facility failed to respond. In a December 2010 letter, the AMC notified the Appellant that F.W.N.H. had not responded to their request for copies of the Veteran's treatment records. While the AMC notified the Appellant that they would make a second attempt in December 2010 to obtain the records from the nursing facility, the AMC requested that the Appellant contact the facility and ask that the records be sent to the AMC. To date, F.W.N.H. and the Appellant have not responded to the AMC's request. 

As the Court of Appeals for Veterans Claims (Court) has held, "[t]he duty to assist in the development and adjudication of a claim is not a one-way street." Wamhoff v. Brown, 8 Vet. App. 517, 522 (1996). "If a [claimant] wishes help, he cannot passively wait for it in those circumstances where he may or should have information that is essential in obtaining the putative evidence." Wood v. Derwinski, 1 Vet. App. 190, 193 (1991). See also Olson v. Principi, 3 Vet. App. 480, 483 (1992). By not responding to the AMC's request or requesting the records from F.W.N.H., the Appellant has thwarted VA's attempt to further assist her in developing her claim. Given the AMC's efforts to date, and the Appellant's refusal to cooperate, it would be unreasonable to place a burden upon VA to turn up heaven and earth in an attempt to secure further response from the claimant. See Hyson v. Brown, 5 Vet. App. 262, 265 (1993).


In Barr v. Nicholson, 21 Vet. App. 303, 311-12 (2007), the Court held that when VA provides a veteran with a medical examination related to a claim for service connection, the examination must be adequate. Here, a medical opinion was rendered in April 2008, with respect to the question of whether the Veteran's death was due to a service-connected disability. The medical opinion involved a review of the claims file and an opinion that was supported by sufficient rationale. Therefore, the Board finds that the medical opinion is adequate for rating purposes. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007) (affirming that a medical opinion is adequate if it provides sufficient detail so that the Board can perform a fully informed evaluation of the claim). Given the foregoing, the Board finds that the VA has substantially complied with the duty to obtain the requisite medical information necessary to make a decision on the Appellant's claim.

In sum, the Board finds the duty to assist and duty to notify provisions of the VCAA have been fulfilled and no further action is necessary under the mandate of the VCAA.

Relevant Laws and Regulations

DIC is payable to a surviving spouse of a qualifying Veteran who died from a service-connected disability. See 38 U.S.C.A. § 1310. The death of a Veteran will be considered as having been due to a service-connected disability when the evidence establishes that such disability was either the principal or a contributory cause of death. The issue involved will be determined by exercise of sound judgment, without recourse to speculation, after a careful analysis has been made of all the facts and circumstances surrounding the death of the Veteran, including, particularly, autopsy reports. See 38 C.F.R. § 3.312(a).

A service-connected disability will be considered as the principal (primary) cause of death when such disability, singly or jointly with some other condition, was the immediate or underlying cause of death or was etiologically related thereto. See 38 C.F.R. § 3.312(b).

A contributory cause of death is inherently one not related to the principal cause. In determining whether the service-connected disability contributed to death, it must be shown that it contributed substantially or materially; that it combined to cause death; that it aided or lent assistance to the production of death. It is not sufficient to show that it casually shared in producing death, but rather it must be shown that there was a causal connection. See 38 C.F.R. § 3.312(c)(1).

Service connection means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred in the line of duty in the active military service or, if pre-existing such service, was aggravated during service. 38 U.S.C.A. § 1110; 38 C.F.R. § 3.303(a). In order to prevail on the issue of service connection in the context of this claim, once the death of the Veteran has been established, there must be medical evidence, or in certain circumstances, competent lay evidence of in-service occurrence or aggravation of a disease or injury leading to death within the regulatory scheme; and competent medical evidence of a nexus between an in-service injury or disease and death. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004); Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009).

Service connection may be granted on a presumptive basis for certain chronic diseases, including cardiovascular-renal disease, if they are shown to be manifest to a degree of 10 percent or more within one year following the Veteran's separation from active military service. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309.

By "competent medical evidence" is meant in part that which is provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. See 38 C.F.R. § 3.159(a). "Competent lay evidence" means "any evidence not requiring that the proponent have specialized education, training, or experience." Lay evidence is competent "if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a lay person." See 38 C.F.R. § 3.159(a)(2); Bruce v. West, 11 Vet. App. 405, 410-11 (1998) (one not a medical expert is nevertheless competent to offer evidence of his symptoms in support of a claim for an increased disability evaluation); see Layno v. Brown, 6 Vet. App. 465, 470 (1994); Harvey v. Brown, 6 Vet. App. 390, 393 (1994).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value.

Although all the evidence has been reviewed, only the most relevant and salient evidence is discussed below. See Gonzales v. West, 218 F.3d 1378 (Fed. Cir. 2000) (holding that the Board must review the entire record but does not have to discuss each piece of evidence).

Factual Background and Analysis

The Appellant principally argues that the Veteran's death, due to atherosclerotic cardiovascular disease (heart disease), is related to a service-connected disability. Specifically, she contends that the Veteran's service-connected PTSD caused or aggravated his heart disorder, which eventually led to his death. Having carefully considered the claim in light of the record and the applicable law, the Board is of the opinion that the preponderance of the evidence is against the claim and must regretfully deny the appeal.
During his lifetime, the Veteran was service connected for the following disabilities: PTSD (70 percent disabling); residuals of a shell fragment wound to the left leg (20 percent disabling); tinnitus (10 percent disabling); peptic ulcer disease (10 percent disabling); scar on the back (noncompensable); scar on the right thigh (noncompensable); and bilateral hearing loss (noncompensable). He was awarded a total disability rating based upon individual unemployability due to his service-connected disabilities, effective as of March 18, 2003. The Veteran was not service-connected for any cardiovascular disorders at the time of his death.

The record reveals that the Veteran died in August 2007. An August 2007 certificate of death lists the immediate cause of the Veteran's death as atherosclerotic cardiovascular disease. Other significant conditions contributing to death but not resulting in the underlying cause were listed as fracture of the left hip and left rib. The manner of death was accidental and it was noted that the Veteran suffered a fall to the floor. His place of death was listed as a private skilled nursing facility. In September 2007, the Veteran's death certificate was amended to include PTSD with panic attacks and peptic ulcer as other significant conditions contributing to death but not resulting in the underlying cause of death.

The Veteran's service treatment records have been reviewed and are negative for reports, diagnoses, or symptomatology attributable to a cardiovascular disorder. The May 1946 separation report of medical examination was negative for symptoms or a diagnosis associated with a cardiovascular disorder.

As reflected in an April 2004 rating decision, the Veteran was awarded service connection for PTSD, which was attributable to his combat service during World War II.

The Veteran's VA outpatient records show treatment for his various medical conditions in the years prior to his death. These records show that he was diagnosed with coronary artery disease in October 2001. A December 2001 psychiatric note reflects that the Veteran's medical history was significant for congestive heart failure, coronary artery bypass, and pacemaker placement. This record includes his reports of increased psychiatric symptomatology following the September 11 bombing of the World Trade Center. Following a mental status evaluation, he was diagnosed with early dementia and delayed PTSD. During a September 2005 VA psychiatry consultation, the Veteran reported having a remote history of panic attacks twenty years prior. He was also noted to have a history of depression comorbid with PTSD symptoms following 9/11; the Veteran denied having any active PTSD symptoms at that time. Overall, these records are negative for an opinion discussing any possible relationship between the Veteran's cardiovascular symptomatology or diagnoses and his PTSD. 

The claims file includes a December 2004 letter from the Veteran's private physician, D.A.G., M.D., in which the physician described the Veteran's PTSD symptomatology. He reported that the Veteran had severe PTSD, manifested by increased nightmares, night sweats and feelings of guilt. He also reported that the Veteran had a history of suicidal ideation.

In January 2006, the Veteran underwent a VA compensation and pension examination, at which time he reported having increased PTSD symptoms in the previous eight to nine years. The examiner noted the Veteran's long history of anxiety associated with his PTSD. Reportedly, his PTSD symptoms included intrusive thoughts, flashbacks, withdrawal, and nightmares related to his military experiences. The examiner noted that the Veteran had peptic ulcer disease, which the examiner concluded was the consequence of his PTSD. He made no comment as to whether the Veteran's PTSD contributed to any of his other disorders. Following a clinical examination, the examiner concluded that the Veteran's ability to carry out responsible activities was curtailed by his obvious dementia, which was likely to worsen. 

In support of her claim, the Appellant submitted a September 2007 letter from the Veteran's treating physician, M.J.F., D.O. In the letter, Dr. M.J.F. stated that he was aware of and had witnessed the Veteran's numerous panic attacks. He essentially opined that his panic attacks were directly related to the cause of the Veteran's death and that the contributing factor to his death was PTSD. 

The Veteran's claims file was reviewed by a second VA examiner in April 2008 for the purpose of rendering an opinion with respect to the Appellant's claim. The examiner noted that the cause of death listed on the Veteran's death certificate was heart disease and that he also suffered from a fracture of his left hip and left rib. In addition, the examiner reported that he reviewed Dr. M.J.F.'s opinion letter. Following his review of the claims file, the examiner essentially stated that there was no evidence in the literature that PTSD causes atherosclerotic heart disease or panic attacks. He noted that it was possible that the Veteran had an acute panic attack that caused his death. However, he highlighted that there was no mention in the evidence of record that this actually occurred. Thus, he concluded that to relate the Veteran's service-connected PTSD to his cause of death would be speculation. 

In a January 2009 letter, Dr. M.J.F. reiterated his previous opinion that the Veteran's PTSD attributed to his death. The physician stated that the Veteran's PTSD attributed to the worsening of his dementia and his general health. He stated that this ultimately led to his failure to thrive, heart failure, and death.

Private treatment records from S.G.H.C., show that the Veteran received hospital, care in the month prior to his death. These records reveal that the Veteran was admitted for emergency treatment on July 23, 2007, after suffering a fall at his nursing home. His medical history was noted to include dementia, coronary bypass graft, pacemaker placement, depression, and panic attacks. At the time of his admission, a clinical examination revealed that his heart sounds were normal, and there were no rubs or murmurs. He was subsequently diagnosed with a left hip fracture and a left rib fracture. He underwent surgery for his left hip fracture on July 24, 2007. A July 31, 2007, discharge report shows that the Veteran underwent physical therapy following his surgery and that he was gradually recovering and doing better. At the time of his discharge his condition was stable. There is no discussion included in these records with regards to whether the Veteran had a cardiovascular condition related to PTSD.

Having reviewed the evidence of record, the Board finds that the preponderance of the evidence is against the claim for service connection for the cause of the Veteran's death. Regrettably, the appeal must be denied.

In this case, the Appellant does not contend, and the evidence does not show, that the Veteran's fatal arteriosclerotic heart disease is causally or etiologically related to any disease, injury, or incident in service, or that such manifested within one year of his discharge from service. Indeed, the Veteran's service treatment records are entirely negative for evidence of any cardiac symptomatology. The record reflects the first evidence of a cardiac disorder in 2001, over fifty years following his separation from active duty. As such, service connection for the cause of the Veteran's death cannot be substantiated on a direct or presumptive basis.

Rather, as noted previously, the Appellant contends that the Veteran's service-connected PTSD, and the stress caused by such condition, resulted in his fatal heart disorder. As such, this case turns on whether the competent and probative evidence shows that the Veteran's service-connected PTSD caused, or contributed to cause, his death. 

The claims file includes conflicting medical opinions with regards to this question. Thus, the Board must determine, as a question of fact, both the weight and credibility of the evidence. Equal weight is not accorded to each piece of evidence contained in a record; every item does not have the same probative value. The Board must account for the evidence which it finds to be persuasive or unpersuasive, analyze the credibility and probative value of all material evidence submitted by and on behalf of a claimant, and provide the reasons for its rejection of any such evidence. See Struck v. Brown, 9 Vet. App. 145, 152 (1996); Caluza v. Brown, 7 Vet. App. 498, 506 (1995); Garielson v. Brown, 7 Vet. App. 36, 40 (1994); Abernathy v. Principi, 3 Vet. App. 461, 465 (1992); Simon v. Derwinski, 2 Vet. app. 621, 622 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164, 169 (1991).

In so doing, the Board acknowledges Dr. M.J.F.'s opinion that the Veteran's service-connected PTSD contributed to the Veteran's heart failure and death. Although the physician's opinion is favorable to the Appellant, the Board must conclude that it lacks probative value and does not provide a basis to warrant service connection. While the conclusions of a physician are medical conclusions that the Board cannot ignore or disregard, see Willis v. Derwinski, 1 Vet. App. 66 (1991), the Board is free to assess medical evidence and is not compelled to accept a physician's opinion. See Wilson v. Derwinski, 2 Vet. App. 614 (1992). 

Specifically, the Board highlights that Dr. M.J.F. did not expressly provide a detailed rationale to support his opinion relating the Veteran's PTSD to his death due to heart disease. The value of a physician's statement is dependent, in part, upon the extent to which it reflects "clinical data or other rationale to support his opinion." Bloom v. West, 12 Vet. App. 185, 187 (1999). See also Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007) ("[A]medical opinion ... must support its conclusion with an analysis that the Board can consider and weigh against contrary opinions."). The weight of a medical opinion is diminished where that opinion is ambivalent, based on an inaccurate factual premise, based on an examination of limited scope, or where the basis for the opinion is not stated. Reonal v. Brown, 5 Vet. App. 458, 461 (1993); Sklar v. Brown, 5 Vet. App. 140 (1993). Essentially, the physician did not identify any medical principles or clinical data to support his conclusion. Moreover, the physician did not indicate whether he reviewed any of the Veteran's medical records, especially those from his hospitalization immediately prior to his death, in rendering his opinion. Given these facts, the Board finds Dr. M.J.F.'s opinion lacks probative value. 

The Board has also given consideration to the fact that the Veteran's death certificate was amended in September 2007 to include PTSD as a significant condition contributing to his death. The Board recognizes that this is potentially significant to the extent that it may be considered a medical determination that the Veteran died as a result of PTSD. However, with consideration of the context and the totality of the evidence of record, the Board does not find that this amendment presents a persuasive showing that PTSD contributed substantially or materially to the Veteran's death. In this regard, the Board finds that the Veteran's death certificate, to include the September 2007 amendment, is not the most probative evidence concerning the medical cause of the Veteran's death. The physician who signed the death certificate provided no rationale or reasoning for any conclusions reached on the certificate form. Neither did the physician offer any rationale or reasoning to explain his decision to amend the certificate to add a reference to PTSD, or to explain why PTSD was not listed on the original death certificate. Again, the Board points out that the weight of a medical opinion is diminished where the basis for the opinion is not stated. Reonal v. Brown, 5 Vet. App. 458, 461 (1993); Sklar v. Brown, 5 Vet. App. 140 (1993). See also Bloom v. West, 12 Vet. App. 185, 187 (1999); Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008); Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). It is also apparent that the doctor revised the Veteran's death certificate only after being requested by the Veteran's family to do so. Thus, the September 2007 amended death certificate is of limited probative value.

In contrast, the Board finds highly probative the April 2008 VA examiner's opinion. Based on a thorough review of the claims file, to include Dr. M.J.F.'s opinion, the VA examiner essentially opined that the Veteran's death due to atherosclerotic cardiovascular disease was not related to his service-connected PTSD. Indeed, the VA examiner concluded that there was no literature that shows PTSD causes atherosclerotic heart disease or panic attacks. The VA examiner's opinion is considered highly probative as it is definitive, based upon a complete review of the Veteran's entire claims file, and supported by detailed rationale. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 299-301 (2008) ("The probative value of medical opinion evidence is based on the medical expert's personal examination of the patient, the physician's knowledge and skill in analyzing the data, and the medical conclusion that the physician reaches.") quoting Guerrieri v. Brown, 4 Vet. App. 467, 470-71 (1993); see also, Stefl v. Nicholson, 21 Vet. App. 120, 124 (2007). Accordingly, the opinion is found to carry significant probative weight. Among the factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). 

Under these circumstances, the Board concludes that the April 2008 VA examiner's findings constitute the most probative (persuasive) evidence on the question of whether the Veteran's death was due to his service-connected PTSD. Hayes v. Brown, 5 Vet. App. 60, 69-70 (1993) ("It is the responsibility of the BVA to assess the credibility and weight to be given the evidence.") (citing Wood v. Derwinski, 1 Vet. App. 190, 192-93 (1992)). See also Guerrieri v. Brown, 4 Vet. App. 467, 470-471 (1993) (the probative value of medical evidence is based on the physician's knowledge and skill in analyzing the data, and the medical conclusion the physician reaches; as is true of any evidence, the credibility and weight to be attached to medical opinions are within the province of the Board).

It is the responsibility of the Board to review all the evidence of record and reach a conclusion by applying the standard of review set forth above. The Federal Circuit has recognized the Board's "authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other items of evidence." Madden v. Gober, 125 F.3d 1477, 1481 (Fed. Cir. 1997). "[I]t is not error for the BVA to favor the opinion of one competent medical expert over that of another when the Board gives an adequate statement of reason or bases. It is the responsibility of the BVA, . . . to assess the credibility and weight to be given to evidence. " Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

Additionally, the Board acknowledges the Appellant's contentions on her own behalf that the Veteran's fatal cardiovascular disease is related to his service-connected PTSD. In offering her opinion, the Appellant indicated in statements of record that the Veteran's psychiatric symptoms had increased in severity over the years. While she is competent to testify as to the Veteran's PTSD symptomatology, she is not competent or qualified, as a layperson, to render an opinion concerning the complex medical relationship between PTSD and cardiovascular disease. See Barr v. Nicholson, 21 Vet. App. 303, 307, 308 (2007); Layno v. Brown, 6 Vet. App. 465, 469- 70 (1994). 

While the Board acknowledges that the Federal Circuit has held that lay testimony could, in certain circumstances, constitute competent nexus evidence, see Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. 2009), in the instant case, the Board finds that the question regarding the potential relationship between PTSD and cardiovascular disease to be complex in nature. See Woehlaert v. Nicholson, 21 Vet. App. 456 (2007) (although the claimant is competent in certain situations to provide a diagnosis of a simple condition such as a broken leg or varicose veins, the claimant is not competent to provide evidence as to more complex medical questions). Therefore, the Board finds the Appellant's statements regarding a nexus between the Veteran's PTSD and his fatal cardiovascular disease to be of little probative value, as she is not competent to opine on such a complex medical question. Specifically, where the determinative issue is one of medical causation, only those with specialized medical knowledge, training, or experience are competent to provide evidence on the issue. See Jones v. Brown, 7 Vet. App. 134, 137 (1994). Therefore, the Board finds that the probative value of the April 2008 VA examiner's opinion outweighs the probative value of the Appellant's statements. As such, the claim for service connection for the Veteran's death is denied.
Although the Board is sympathetic to the Appellant's assertions, fully appreciates her position, and by no means wishes to minimize the service the Veteran provided, the claim for service connection for the Veteran's cause of death must be denied for the foregoing reasons. In arriving at the decision to deny the claim, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990). As such, the appeal is denied.


ORDER

Service connection for the cause of the Veteran's death is denied.



____________________________________________
K.A. KENNERLY
Acting Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs