Citation Nr: 1443662 
Decision Date: 09/30/14 Archive Date: 10/06/14

DOCKET NO. 10-36 504 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Chicago, Illinois



THE ISSUE

Entitlement to service connection for sleep apnea, to include as secondary to service-connected posttraumatic stress disorder (PTSD).



REPRESENTATION

Appellant represented by: Wisconsin Department of Veterans Affairs



ATTORNEY FOR THE BOARD

Ryan Frank, Associate Counsel



INTRODUCTION

The Veteran served on active duty from June 2001 to June 2004.

This matter initially came before the Board of Veterans' Appeals (Board) on appeal from a June 2009 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Milwaukee, Wisconsin. Jurisdiction was subsequently transferred to the RO in Chicago, Illinois.

This appeal was previously before the Board in February 2014. The Board remanded it for additional development, and it has been returned to the Board for further review.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of the appellant's case must consider these electronic records. Review of the documents in the Veteran's Virtual VA electronic claims file reveals no additional records pertinent to the appeal.


FINDING OF FACT

The preponderance of the evidence is against finding that the Veteran's sleep apnea is due to a disease or injury in service or caused or made worse by service-connected PTSD.


CONCLUSION OF LAW

The criteria for establishing service connection for sleep apnea, to include as secondary to PTSD, have not been met. 38 U.S.C.A. §§ 1110, 5103, 5103A, 5107 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.304, 3.310 (2013).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act

The Veterans Claims Assistance Act of 2000 (VCAA), in part, describes VA's duties to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (West 2002 & Supp. 2013); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2013). The VCAA applies to the instant claim. 

VA is required to notify the claimant and his or her representative of any information, and any medical or lay evidence, not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b); Quartuccio v. Principi, 16 Vet. App. 183 (2002). 

The duty to notify in this case was satisfied by a letter sent to the Veteran in May 2009. The Veteran indicated in May 2009 that he had provided all evidence that would support his claim. The claim was last adjudicated in June 2009. 

The record also reflects that VA has made reasonable efforts to obtain relevant records adequately identified by the Veteran, including service treatment records, service personnel records, VA treatment records, and written statements of the Veteran.

In sum, the VCAA provisions have been considered and complied with. The Veteran was notified and aware of the evidence needed to substantiate his claim, the avenues through which he might obtain such evidence, and the allocation of responsibilities between himself and VA in obtaining such evidence. The Veteran was an active participant in the claims process by submitting evidence and argument. Thus, the Veteran was provided with a meaningful opportunity to participate in the claims process and has done so. Any error in the sequence of events or content of the notices is not shown to have affected the essential fairness of the adjudication or to cause injury to the Veteran. Therefore, any such error is harmless and does not prohibit consideration of this matter on the merits.

Relevant Laws and Regulations

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by service. 38 U.S.C.A. §§ 1110; 38 C.F.R. § 3.303. Evidence of continuity of symptomatology from the time of service until the present is required where the chronicity of a condition manifested during service either has not been established or might reasonably be questioned. 38 C.F.R. § 3.303(b). Regulations also provide that service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disability was incurred in service. 38 C.F.R. § 3.303(d).

In order to prevail on the issue of service connection there must be competent evidence of a current disability; competent evidence of in-service occurrence or aggravation of a disease or injury; and competent evidence of a nexus between an in-service injury or disease and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Pond v. West, 12 Vet App. 341, 346 (1999).

Service connection may also be granted for a disability that is proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a). This permits service connection not only for a disability caused by a service-connected disability, but for the degree of disability resulting from aggravation of a disability by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995). In the case of aggravation by a service-connected disability, a veteran may be compensated for the degree of disability over and above the degree of disability existing prior to the aggravation. Id; see also 38 C.F.R. § 3.310(b).

Analysis

The Veteran claims that he began experiencing symptoms of sleep apnea while on active duty and that his service-connected PTSD could have caused or aggravated this disorder. His March 2001 entrance examination and his April 2004 exit examination are silent as to sleep apnea. The Veteran claims that a "consult request dated in 2003" noted that he was "having duty impairment 'likely due to OSA.'" OSA stands for obstructive sleep apnea. His service treatment records show a December 2003 notation of "possible OSA" and note that a sleep study had not been done to investigate the Veteran's fatigue symptoms. Because this is the only mention of sleep apnea in the Veteran's service treatment records and the date coincides with the Veteran's recollection, it is probable that he misquoted the December 2003 record.

There are no further mentions of sleep apnea in the Veteran's recorded medical history until a VA primary care visit in August 2007 in which the Veteran reported snoring and "witnessed cessation of breathing." Due to a suspicion of "abnormal sleep apnea," VA referred the Veteran for a sleep study. Although the record does not contain the sleep study itself, it is undisputed that the Veteran was diagnosed with sleep apnea in December 2008. The Veteran's VA treatment records confirm that he continues to receive treatment for sleep apnea but the records are silent as to the likely onset date of the disorder or any possible connection between the disorder and any event in the Veteran's service.

In May 2009, the Veteran underwent a VA examination by a certified physician assistant. The examiner asserted that the Veteran's "service medical records are negative for any complaints suggestive of sleep apnea." She also noted that the Veteran claimed to have been having trouble with snoring "for a long time" and that he "has always been told that he snores badly" but denied "any witnessed apnea in the past specifically during service." The examiner found that there was no literature to support a theory that PTSD can cause or aggravate sleep apnea and that the most likely factor aggravating the disorder was "chronic obesity."

After receiving the Veteran's notice of disagreement, the RO asked the May 2009 examiner to provide an addendum opinion that would address the 2003 service treatment record. The examiner responded in June 2010 by noting the lack of reported symptoms of sleep apnea in that record other than fatigue and opining that a notation of "possible OSA" with nothing but fatigue to support it "does not warrant a diagnosis of sleep apnea."

In February 2014, the Board remanded this matter for an addendum opinion. The Board specifically requested opinions on the possibility of a connection between any other respiratory condition the Veteran experienced during active service "to include contracting pneumonia, bronchitis, or a reactive airway disorder and being assessed with possible obstructive sleep apnea" and on the possibility that the Veteran's PTSD might have caused or aggravated his sleep apnea. In response, a VA physician opined in March 2014 that "[i]t is less likely as not that any obstructive sleep apnea (OSA) is related etiologically to any events in service such as pneumonia, bronchitis, or a reactive airway disorder, as these are conditions of the lower respiratory tract (lungs) and are not related to OSA, which is a condition of the pharynx (upper airway)." The physician further opined that it is less likely than not that the Veteran's PTSD could have caused or aggravated his sleep apnea because it is impossible for PTSD or any other mental disorder to have "any effect on the anatomy of the pharynx."

The record contains no private treatment records related to sleep apnea and the Veteran has not indicated that he has ever received private treatment for this disorder. 

In light of the evidence of record discussed above, there is no competent medical evidence of a nexus between the Veteran's sleep apnea and an in-service injury or event or between his sleep apnea and PTSD, and there is therefore currently no basis that would allow for a grant of service connection for sleep apnea. 

The only competent and probative opinions of record are the report of the May 2009 examiner, her June 2010 addendum opinion, and the March 2014 examiner's addendum opinion. The May 2009 examiner performed an in-person examination of the Veteran and both examiners reviewed the Veteran's medical history and lay contentions. On the basis of this information and their expert medical knowledge, they concluded that the Veteran's sleep apnea was not caused or aggravated by PTSD or any event in service. 

The Veteran has not identified any medical professional who has concurred with his assertion that his sleep apnea is caused or aggravated by his PTSD or any event in service. The only comment by a medical professional that even arguably supports the Veteran's claim is the December 2003 notation that obstructive sleep apnea was "possible." The June 2010 addendum opinion that this comment is insufficient by itself to constitute a diagnosis is both competent and persuasive. 

Other than the December 2003 notation, the only evidence in favor of the Veteran's claim consists of lay statements by the Veteran that he has been snoring for a long time. The Board notes that a veteran, as a layperson, is competent to report on matters observed or within his personal knowledge. See Layno v. Brown, 6 Vet. App. 465, 470 (1994). While the Veteran may be competent to report the manifestation of certain symptoms of sleep apnea, such as snoring, he is not competent to diagnose himself with sleep apnea or to provide a medical nexus opinion regarding the cause or aggravating factors of sleep apnea. This claim turns on the medical matter of nexus to service or to PTSD, a matter within the province of trained medical professionals. See Jones v. Brown, 7 Vet. App. 134, 137-38 (1994). As the appellant has not been shown to be other than a layperson without the appropriate medical training and expertise, he is not competent to render a probative (i.e., persuasive) opinion on a medical matter. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007). Hence, the lay assertions in this regard have no probative value.

The Board finds that the May 2009 examination report and the two addendum opinions constitute probative evidence on the medical nexus questions, based as they were on review of the Veteran's documented medical history, assertions, and examination and supported by medical evidence of record. The Board also points out that VA adjudicators are not free to ignore or disregard the medical conclusions of a VA physician, and are not permitted to substitute their own judgment on a medical matter. See Colvin v. Derwinski, 1 Vet. App. 171 (1991); Willis v. Derwinski, 1 Vet. App. 66 (1991). 

In short, as there is no competent evidence that the Veteran's sleep apnea was incurred in or otherwise related to service, nor is there any competent medical evidence indicating that the Veteran's sleep apnea was caused or aggravated by any service-connected condition, the preponderance of the evidence is against the claim for service connection for sleep apnea.

In reaching the conclusion above, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the appellant's claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Entitlement to service connection for sleep apnea is denied.


____________________________________________
MICHAEL D. LYON 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs