Citation Nr: 1452679 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 11-09 865 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Hartford, Connecticut


THE ISSUES

1. Entitlement to service connection for an anxiety disorder, to include as secondary to service-connected fibromyalgia.

2. Entitlement to service connection for Raynaud's syndrome, to include as secondary to service-connected fibromyalgia.
 

REPRESENTATION

Appellant represented by: Connecticut Department of Veterans Affairs


ATTORNEY FOR THE BOARD

A. Lech, Associate Counsel

INTRODUCTION

The Veteran had active service from November 1990 to March 1991.

This case comes before the Board of Veterans' Appeals (Board) on appeal from a December 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Hartford, Connecticut. 

This case was previously before the Board in February 2014, at which time the issues currently on appeal were remanded for additional development. The February 2014 Board decision granted the Veteran service connection for fibromyalgia. The decision also required that the Veteran be scheduled for VA examinations to address her claims of service connection for an acquired psychiatric disability and Raynaud's syndrome, both as secondary to the service-connected fibromyalgia. 

Based on those examinations, a July 2014 rating decision granted the Veteran service connection for major depressive disorder, evaluated at 50 percent, and assigned a 40 percent rating for fibromyalgia. 

The issue of service connection for Raynaud's syndrome is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action on his part is required.


FINDING OF FACT

The Veteran does not have a current diagnosis of an anxiety disorder, and her current anxiety symptomatology is part of the cluster of her service-connected fibromyalgia symptomatology.

CONCLUSION OF LAW

The criteria for service connection for an anxiety disorder, as secondary to service-connected fibromyalgia, have not been met. 38 U.S.C.A. §§ 1101, 1110, 5103, 5103A, 5107(b) (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.159, 3.303, 3.310 (2014).


REASONS AND BASES FOR FINDING AND CONCLUSION

I. VA's Duty to Notify and Assist

VA has a duty to notify and a duty to assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5103, 5103A (West 2002 & Supp. 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2014).

Proper notice from VA must inform the claimant and his representative, if any, prior to the initial unfavorable decision on a claim by the AOJ of any information and any medical or lay evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. 38 U.S.C.A. § 5103(a) (West 2002 & Supp. 2014); 38 C.F.R. § 3.159(b) (2014); Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004); Quartuccio v. Principi, 16 Vet. App. 183 (2002). These notice requirements apply to all five elements of a service-connection claim (Veteran status, existence of a disability, a connection between the Veteran's service and the disability, degree of disability, and effective date of the disability). Dingess v. Nicholson, 19 Vet. App. 473 (2006). Information that a disability rating and an effective date for the award of benefits will be assigned if service connection is awarded must be included. Id. 

An August 2010 letter fulfilled all the above-described notice requirements. 

The Board also concludes that VA's duty to assist has been satisfied. The Veteran's service treatment records and VA treatment records are in evidence. 

The RO also provided the Veteran with VA examinations for her service connection claims in May 2014. The examiners obtained a complete complaint history from the Veteran and provided thorough physical examinations, including the appropriate testing. The examinations of record are adequate for adjudicating the issues on appeal. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of this claim, the Board finds that any such failure is harmless. Mayfield v. Nicholson, 19 Vet. App. 103 (2005), rev'd on other grounds, Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006).

II. Merits of the Claims

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. See 38 U.S.C.A. §§ 1110, 1131 (West 2002 & Supp. 2014); 38 C.F.R. § 3.303(a) (2014). "To establish a right to compensation for a present disability, a Veteran must show: '(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service'- the so-called 'nexus' requirement." Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010) (quoting Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection may be established on a secondary basis for a disability that is proximately due to, the result of, or aggravated by a service-connected disease or injury. 38 C.F.R. § 3.310(a) (2014). In order to establish service connection for a claimed secondary disorder, there must be medical evidence of a current disability; evidence of a service-connected disability; and medical evidence of a nexus between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998); Reiber v. Brown, 7 Vet. App. 513, 516-7 (1995). 

After considering all information and lay and medical evidence of record in a case with respect to benefits under laws administered by the Secretary, when there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the benefit of the doubt will be given to the claimant. 38 U.S.C.A. § 5107(b) (West 2002 & Supp. 2014); 38 C.F.R. § 3.102 (2014). The benefit of the doubt rule is inapplicable when the evidence preponderates against the claim. Ortiz v. Principi, 274 F.3d 1361 (Fed. Cir. 2001). 

In various statements, the Veteran expressed the belief that she has an anxiety disorder, which was caused by her service-connected fibromyalgia. She has alternately characterized her anxiety as a symptom of her fibromyalgia, and not a separate disability. See Statements dated August 2010, September 2010, October 2010, January 2011, and May 2011. 

The Veteran is deemed competent to state that she experiences anxiety. Barr v. Nicholson, 21 Vet. App. 303 (2007) (lay testimony is competent to establish the presence of observable symptomatology); Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Davidson v. Shinseki, 581 F.3d 1313 (Fed. Cir. Sept. 14, 2009). However, a lay person without appropriate medical training and expertise is not competent to opine on more complex medical questions. See, e.g., Jandreau, 492 F.3d at 1377 (holding that a layperson cannot diagnose cancer). Likewise, mere conclusory or generalized lay statements that a service event or illness caused a current disability are insufficient. Waters v. Shinseki, 601 F.3d 1274, 1278 (2010). Here, the question of whether the Veteran's anxiety is related to her service-
connected fibromyalgia is beyond the realm of a layman's competence and is something that requires a medical opinion. As such, the Veteran's assertions that her anxiety is secondary to her service-connected fibromyalgia have no probative value, as she is not a medical professional qualified to opine as to the diagnosis of her symptoms and their etiology. 

The pertinent question, first and foremost, is whether the Veteran's anxiety symptoms represent a separate and distinct disability or whether they constitute a component or symptom of her already service-connected fibromyalgia. 

The Veteran's service treatment records (STRs) did not show complaints or treatment for anxiety. An April 2010 VA treatment record referred to a "mood disorder" and related that the Veteran "felt down at times." A June 2010 VA treatment note referred to the Veteran's report of occasional blanching of her fingertips, with anxiety or stress. In December 2010 and March 2011, the Veteran was once again assessed with a mood disorder. There are no other mentions of the Veteran's anxiety in her VA treatment records. 

The Veteran underwent a VA general medical examination in November 2011. The examiner stated that the Veteran reported being irritable due to her service-connected disabilities and having a history of post-partum depression. No anxiety-related issues were mentioned. 

The Veteran underwent a VA mental disabilities examination in May 2014. She reported that she began experiencing anxiety and depression in the past four years after being diagnosed with fibromyalgia. Following a review of the claims folder, interview, and examination, the examiner diagnosed the Veteran with major depressive disorder with anxious distress. The examiner saw the Veteran's fibromyalgia, low back pain, and sciatica as medical diagnoses relevant to the understanding or management of the Veteran's psychiatric disability. The examiner specifically noted that the Veteran did not have more than one mental disorder diagnosed. The Veteran's major depressive disorder was as likely as not due to her service-connected fibromyalgia. However, as opposed to be being a separate and distinct psychiatric disorder, the examiner stated that the Veteran's anxiety was part and parcel of her major depressive disorder. She checked off "anxiety" as one of the symptoms of the major depressive disorder. As noted, the Veteran was granted service connection for major depressive disorder, as secondary to service-connected fibromyalgia, in a July 2014 RO rating decision.

The Veteran also underwent a VA examination for fibromyalgia in May 2014. The examiner found that the Veteran experienced several symptoms attributable to fibromyalgia - widespread muscoskeletal pain, stiffness, fatigue, sleep disturbances, paresthesias, headache, depression, anxiety, and Raynaud's-like symptoms. 

In a July 2014 addendum, the examiner once again related that the Veteran experienced several symptoms attributable to fibromyalgia - widespread muscoskeletal pain, stiffness, fatigue, sleep disturbances, paresthesias, headache, depression, anxiety, and Raynaud's-like symptoms. 

Due consideration must be given to all pertinent medical and lay evidence in evaluating a claim to disability benefits in situations where a layperson is competent to identify the medical condition. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); 38 U.S.C. § 1154(a) (West 2002 & Supp. 2014). The Board cannot ignore or disregard the medical conclusions of a VA physician and is not permitted to substitute its own judgment for that of a medical professional. Willis v. Derwinski, 1 Vet. App. 66 (1991). Therefore, the Veteran's statements regarding the nature and etiology of her anxiety are found to be less persuasive than the medical opinions regarding the nature and etiology of the Veteran's anxiety, which state that the anxiety symptoms are part of the cluster of fibromyalgia symptoms (and of her major depressive disorder), and are not a separate and distinct disability.

The Board finds it significant that neither the Veteran nor her representative have presented or identified any contrary medical opinion that supports the claim for service connection for an anxiety disorder. The Board finds that the May 2014 VA examiner's opinion is the most probative opinion of record and establishes that the Veteran's anxiety is part of her fibromyalgia symptomatology, or a symptom of her depressive, and is not a separate and distinct disability. Therefore, service connection for an anxiety disorder as secondary to service-connected fibromyalgia cannot be established. 

For all the foregoing reasons, the Board finds that the claim for service connection for an anxiety disorder, as secondary to fibromyalgia, must be denied. The evidence of record simply fails to support a currently diagnosed anxiety disorder, as opposed to anxiety symptoms attributed to service connected disabilities. A basis upon which to grant service connection has not been presented. See Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992) (holding that in the absence of proof of a present disability, there can be no valid claim). The appeal is denied.


ORDER

Entitlement to service connection for an anxiety disorder, to include as secondary to service-connected fibromyalgia, is denied.


REMAND

As part of its Remand, the Veteran underwent a VA examination in May 2014. The examiner noted that the Veteran reported that her hands and feet felt cold most of the time, and that she had to run them under warm water to get them warm. It was noted her digits did not turn white but that they felt tingly at times. The examiner opined that the Veteran did not have evidence of primary or secondary Raynaud's disease. Acknowledging the symptoms of cold hands and feet with tingling, the examiner based her negative opinion on the finding that there was no color change in the extremities that would be consistent with Raynaud's disease. Reference was made to a Mayo Clinic Study. The examiner noted that ankle-brachial index (ABI) testing, which was used to assess risk assessment for peripheral artery disease, was not indicated.

In a July 2014 addendum, the examiner noted that she has reviewed the conflicting medical evidence in the case and, as stated in the May 2014 examination, the examiner opined that the Veteran did not have Raynaud's syndrome, but rather Raynaud-like symptoms as part of her fibromyalgia. The examiner once again related that the Veteran did not have evidence of primary or secondary Raynaud's with symptoms of hands and feet feeling cold with tingling, and that there was no color change in the extremities which would be consistent with Raynaud's. The examiner found that the Veteran experienced several symptoms attributable to fibromyalgia - widespread musculoskeletal pain, stiffness, fatigue, sleep disturbances, paresthesias, headache, depression, anxiety, and Raynaud's-like symptoms. The examiner reported that the Veteran's Raynaud's-like symptoms were part of the constellation of fibromyalgia symptoms, and not a distinct entity, just like claudication was a symptom of PVD. 

However, neither examination report appears to have considered a June 2010 VA treatment record wherein the Veteran reported of occasional blanching of her fingertips with cold exposure or anxiety/stress. Also of record is an October 2010 statement from her spouse who indicated that Veteran had trouble sleeping due to chronic pain, was stressed during the day, and that her fingers and toes became white and numb, and turned red and painful once the whiteness receded. [Emphasis added]. 

The Veteran's brother similarly reported that the Veteran's rheumatologist diagnosed her with Raynaud's syndrome. He related that the Veteran's fingers and toes turned pale and white multiple times a day [Emphasis added], and that the Veteran complained of accompanying pain and a burning sensation. He stated that the Veteran used a heating pad, took hot showers, and wore gloves and heavy socks to relieve her symptoms; that the Veteran experienced those symptoms year-round; and that the symptoms were caused by stress as well as by changes in temperature. 


In light of the competent reports that the Veteran experiences blanching of the fingers along with numbness and tingling of the fingers, the Board finds that additional VA examination is necessary. The examiner does not appear to have considered these reports. There is also a question as to whether the referenced ABI testing would rule-out the presence of Raynaud's syndrome. In other words, it remains unclear whether these symptoms represent separate and distinct disability (Raynaud's syndrome) as opposed to being Raynaud's-like symptoms of her fibromyalgia. 

Accordingly, the case is REMANDED for the following actions:

1. Obtain the Veteran's VA treatment records for the period from November 2010 to the present.

2. Return the claims file to the VA examiner who provided the opinion in May 2014 in order to provide an addendum opinion as to whether the Veteran has primary or secondary Raynaud's syndrome. Consideration must be given to the competent and credible statements that the Veteran experiences blanching of the fingers accompanied by pain and numbness. The examination must also state whether any testing could be conducted that would confirm or rule-out the diagnosis. If such a testing exists, to include ABI testing, such testing should be conducted. 

If a diagnosis of Raynaud's syndrome is established, the examiner should state whether it is as least likely as not that the disorder had its onset in service or is otherwise related to her active service, to include her service connected fibromyalgia.

If the examiner that conducted the May 2014 VA examination is no longer available, the Veteran should be afforded a new examination that addresses the above question. 

Rationale should be provided for all requested opinions. If an opinion cannot be provided without resorting to mere speculation, such should be stated with a supporting explanation.

3. After completing the above actions, the Veteran's claim should be readjudicated. If any of the claims remains denied, a supplemental statement of the case should be provided to the Veteran and her representative. After they have had an adequate opportunity to respond, all issue(s) properly on appeal should be returned to the Board for further appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. See Kutscherousky v. West, 12 Vet. App. 369 (1999).

These claims must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the Court for additional development or other appropriate action must be handled in an expeditious manner. 38 U.S.C.A. §§ 5109B, 7112 (West 2002 & Supp. 2014).



____________________________________________
MICHAEL A. HERMAN
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs