Citation Nr: 1749193 
Decision Date: 10/31/17 Archive Date: 11/06/17

DOCKET NO. 09-44 544 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Waco, Texas


THE ISSUES

1. Entitlement to service connection for a right knee disorder, to include as secondary to service-connected right and left ankle sprains. 

2. Entitlement to service connection for obstructive sleep apnea (OSA), claimed as secondary to service-connected hiatal hernia, chronic duodenal ulcer with gastroesophageal reflux disease (GERD), and bronchitis. 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

The Veteran and his spouse


ATTORNEY FOR THE BOARD

J.A. Williams, Associate Counsel 


INTRODUCTION

The Veteran served on active duty from January 1955 to April 1978. 

This matter comes before the Board of Veterans Appeals (Board) on appeal from June 2008 and December 2010 rating decisions issued by the Department of Veterans Affairs (VA) Regional Office (RO) in Waco, Texas, which denied service connection for obstructive sleep apnea and a right knee disability respectively. 

In May 2013, the Veteran and his spouse testified at a hearing before a Decision Review Officer (DRO) at the RO. He also provided testimony at a Board video-conference hearing before a Veterans Law Judge in February 2016. Transcripts of both hearings have been associated with the record. In May 2017, the Veteran was notified that the Veterans Law Judge who had conducted the February 2016 hearing was no longer employed by the Board. As such, he was offered an opportunity to testify at a new Board hearing. However, in May 2017, the Veteran responded that he did not wish to appear at another Board hearing and requested that his case be considered on the evidence of record. 

In May 2016 and July 2017, the Board remanded these claims for additional development. The Board finds that with respect to the Veteran's right knee claim, the RO substantially complied with the remand instructions and that any lack of compliance was remedied by subsequent remands. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)). 

The Board also notes that the Veteran's claim of entitlement to service connection for a bilateral hand disorder, to include arthritis, to include as secondary to service-connected residuals of a right hand fracture was granted during the pendency of this appeal. See August 2017 Rating Decision. The Board considers this a full grant of the benefits sought on appeal and therefore will not address the issue in the decision below.

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The issue of entitlement to service connection for obstructive sleep apnea is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction. 


FINDINGS OF FACT

1. The Veteran's right knee disability did not have its onset in service, did not manifest to a compensable degree within one year of separation and is not otherwise related to service.

2. The Veteran's right knee disability was not proximately due to or aggravated by his service-connected bilateral ankle disabilities. 


CONCLUSION OF LAW

The criteria for service connection for a right knee disability are not met. 
38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310 (2016).






REASONS AND BASES FOR FINDINGS AND CONCLUSION

Relevant Legal Principles 

Establishing service connection requires (1) evidence of a current disability; (2) evidence of in-service incurrence or aggravation of a disease or injury; and (3) evidence of a nexus between the claimed in-service disease or injury and the present disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004). 

Moreover, pursuant to 38 C.F.R. § 3.309, where a veteran served continuously for ninety (90) days or more during a period of war, or during peacetime service after December 31, 1946, and a chronic disease, such as arthritis, becomes manifest to a degree of 10 percent within one year from the date of termination of such service, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1131, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

Service connection may also be established on a secondary basis for a disability which is shown to be proximately due to or the result of a service-connected disease or injury. 38 C.F.R. § 3.310(a) (2016). Establishing service connection on a secondary basis requires evidence sufficient to show that a current disability exists and that the current disability was either caused by or aggravated by a service-connected disability. 38 C.F.R. § 3.310 (a) (2016); Allen v. Brown, 7 Vet. App. 439 (1995). 

Analysis 

The Veteran asserts that his right knee disorder is related to service or is caused or aggravated by his service-connected bilateral ankle disabilities. See May 2013 DRO Hearing Transcript; February 2016 Board Hearing Transcript. 

The record shows that the Veteran has a current diagnosis of bilateral knee osteoarthritis. See February 2016 VA Treatment Note. The issue that remains disputed is whether the Veteran's current knee disability is related to service, manifested to a compensable degree within one year of service, or is related to a service-connected disability. 

A February 1977 service treatment note indicated that the Veteran twisted his right knee. However, at separation, a clinical evaluation showed normal lower extremities and the Veteran denied a "trick" or locked knee. See February 1978 Separation Examination. 
 
A June 1978 VA Examination Report was negative for a right knee injury. In addition, during a May 2010 VA general examination the Veteran reported that his residuals of a right knee injury were okay. Furthermore, a July 2010 radiology report showed a normal right knee. See September 2010 VA Examination. Notably, when the Veteran initially filed his claim, he did not assert that his knee disability was directly related to an event or injury in service. See July 2010 Statement in Support of Claim. In filing his claim, the Veteran specifically asserted that his right knee disability is caused by his service-connected right ankle disability. Id. See May 2013 DRO Hearing Transcript. The Veteran also reported that his right knee did not give him problems during active service. See February 2016 Hearing Transcript. 

The Veteran was afforded a VA examination in October 2016. The VA examiner found that the Veteran's right knee disorder was less likely than not incurred in or caused by an in-service injury, event, or illness. The examiner reasoned that she was unable to find any documentation of an evaluation for or diagnosis of a knee condition during the Veteran's military service, to include the Veteran's February 1977 complaint of a twisted knee. Further, the examiner indicated that the Veteran's most recent VA rheumatology note provided a diagnosis of "gouty arthritis, not crystal proven;" however, there was no evidence found in his service treatment records that he had gout during military service. Additionally, the examiner noted that the Veteran's February 1978 Report of Medical Examination revealed no abnormal findings for his knee, and his corresponding report of medical history indicated that he never had or was currently suffering from a "'trick' or locked knee." Furthermore, the examiner reported that the Veteran's 2015 bilateral knee x-rays noted "no significant degenerative changes." 

Based on the Veteran's own contentions that his knee disability had its onset after service, the absence of complaints of or treatment for a knee disability for several years after service, and the October 2016 VA examiner's opinion that the Veteran's current knee disability is not related to an incident or injury in service, service connection on a direct basis is not warranted. 

The Board also finds that the preponderance of the evidence is against a finding that the current right knee disability was caused or aggravated by his service-connected bilateral ankle disability. 

The Veteran was afforded a VA examination in September 2010. The examiner found the Veteran's right knee condition was not caused by or a result of the right ankle disorder. The rationale for the opinion was the Veteran's right knee was normal until he had a specific injury to the right knee in 2010. The Veteran did not give a history of right ankle instability causing him to twist his right knee. However, the examiner did not specifically address whether the Veteran's right knee disorder was aggravated by his service-connected bilateral ankle disabilities.

In a July 2017 addendum medical opinion, the VA examiner opined that it is less likely than not that the Veteran's right knee disability was caused or aggravated by his service-connected bilateral ankle disabilities. The examiner reasoned as follows:
 
"Degenerative joint disease is commonly associated with anatomical wear and tear over time. Degenerative joint disease [DJD] is not a contagious disease and bears no similarity to a metastasizing tumor. DJD of a joint, in the practice of medicine, is typically evaluated as an individual and distinct single joint condition or diagnosis. Exceptions are made in the case of inflammatory and auto immune diseases, for example for Rheumatoid arthritis, which can cause poly arthritis (many joints). Many individuals develop arthritis or DJD in one joint without DJD in the paired contralateral or other remote joint. It goes against the precepts of medical practice to treat the development of DJD in one joint as a sequel or consequence of DJD in another. Each joint is typically evaluated as an individual. There is no clear evidence in the medical literature to suggest that an injury to one lower extremity would have any significant impact on the opposite uninjured limb, or a remote joint, unless the injury resulted in major muscle or nerve damage causing partial or complete paralysis of the damaged leg, and/or shortening of the injured lower extremity resulting in a limb length discrepancy of more than four or five centimeters so that the individual's gait pattern is altered to the extent that clinically there is an obvious lurching type gait (a significant limp)."

The Board finds that the VA examiner's opinion is adequate and highly probative to the question at hand. The examiner possessed the necessary education, training, and expertise to provide the requested opinions. See Grottveit v. Brown, 5 Vet. App. 91, 93 (1993). In addition, the VA examiner provided adequate rationales for the opinions, and the opinions were based on an examination and interview of the Veteran, as well as on a review of the service treatment records, the post-service treatment records and examinations, and the lay statements of the Veteran. The opinions considered an accurate history, were definitive and supported by a detailed rationale that considered the lay and medical evidence. Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008). 

Significantly, the Veteran has not presented or identified any contrary medical opinion that supports the claim for service connection. VA adjudicators are not free to ignore or disregard the medical conclusions of a VA physician, and are not permitted to substitute their own judgment on a medical matter. Colvin v. Derwinski, 1 Vet. App. 171 (1991); Willis v. Derwinski, 1 Vet. App. 66 (1991). The Board finds that the most persuasive evidence of record shows that the current knee disability is not related to his service-connected bilateral ankle disabilities. 

The Board has also considered the Veteran's assertions that his current knee disability was caused or aggravated by his service-connected ankle disabilities. The Veteran is competent to testify to facts or circumstances that can be observed and described by a lay person. 38 C.F.R. § 3.159(a)(2); Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011). It is also well established that lay persons without medical training, such as the Veteran, are not competent to provide medical opinions on matters requiring medical expertise. See Jandreau v. Nicholson, 492 F.3d 1372, 1376-77 (Fed. Cir. 2007) (noting general competence to testify as to symptoms but not to provide medical diagnosis). Whether the Veteran's current knee disability is related to another service-connected disability requires medical expertise to determine. Thus, the Board finds the VA medical opinions more probative than the Veteran's statements. 

The Board has also considered whether service connection is warranted on a presumptive basis. However, the evidence does not show and the Veteran does not assert that his right knee disability manifested to a compensable degree within one year of separation from service. The Veteran was afforded a VA examination in June 1978 which showed that the Veteran did not have a right knee disorder. The Veteran was not shown to have arthritis of the bilateral knees until 2016 - over 30 years after service. Thus, service connection on a presumptive basis is not warranted. 

In reaching this conclusion, the Board has considered the applicability of the benefit of the doubt doctrine. However, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); Ortiz v. Principi, 274 F.3d 1361, 1364 (Fed. Cir. 2001); Gilbert v. Derwinski, 1 Vet. App. 49, 55-57 (1990).


ORDER

Entitlement to service connection for a right knee disorder, to include as secondary to service-connected right and left ankle sprains is denied. 




REMAND

This matter was remanded to the RO in July 2017. Unfortunately, the Board finds that there still has not been substantial compliance with the remand instructions and another remand is required. See Stegall v. West, 11 Vet. App. 268 (1998).

The Board found that the prior VA medical opinions regarding whether the Veteran's obstructive sleep apnea was proximately due to or caused by his service-connected bronchitis were inadequate. See October 2016 VA Examination Report. The Board requested an addendum opinion as to this issue. The examiner was also asked to address the September 2012 VA treatment note that stated, "The Veteran's bronchitis did not help his obstructive sleep apnea but does not cause it." In July 2017 an addendum opinion was issued. The examiner found that it is less likely than not that the Veteran's obstructive sleep apnea is due to or aggravated by his service - connected bronchitis. The examiner reasoned by reiterating the September 2012 statement in the Veteran's treatment notes that his OSA does not help his bronchitis but that one does not cause the other. The Board finds this rationale unresponsive to the inquiry. As such, a remand for an addendum opinion is necessary. 

Accordingly, the case is REMANDED for the following action:

(This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain a VA addendum opinion by a different VA examiner (if available), to provide an opinion as to whether the Veteran's obstructive sleep apnea is AGGRAVATED (i.e., permanently worsened beyond the natural progress of the disorder) by his service-connected bronchitis. If aggravation is found, then the examiner should quantify the degree of such aggravation, if possible. 

The examiner must discuss the September 2012 VA treatment note indicating that the Veteran's bronchitis does not help his sleep apnea [i.e., suggesting aggravation] but does not cause it. 

A fully articulated medical rationale for each opinion expressed must be set forth in the medical report. The examiner should cite to the medical and lay evidence of record, and discuss the particulars of this Veteran's medical history and the relevant medical sciences that apply to this case, including the use of any medical literature, which may reasonably explain the medical guidance in the study of this case.
 
2. Readjudicate the appeal. If the determination remains unfavorable to the Veteran, then the RO should issue a supplemental statement of the case. An appropriate period of time should be allowed for response by the Veteran and his representative. Thereafter, the case should be returned to the Board for further appellate consideration, if in order.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

 (CONTINUED ON NEXT PAGE)







This claim must be afforded expeditious treatment. The law requires that all claims remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
TANYA SMITH
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs